Defendant filed a motion to dismiss plaintiff's appeal to the Full Commission and that motion is hereby DENIED. Plaintiff's counsel made a motion to the Full Commission to withdraw as counsel for the plaintiff and this motion is hereby GRANTED. The Full Commission has reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman, the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; rehear the parties or their representatives; or amend the Decision and Order. Accordingly, the Full Commission affirms the Decision and Order of Deputy Commissioner Morgan S. Chapman.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The plaintiff's intestate, Letitia Cullom, appears by and through the administratrix of her estate, Mary Chapman.
4. Letitia Cullom, plaintiff's intestate, late of Onslow County, North Carolina, died on October 22, 1997. The plaintiff, Mary Chapman, mother of Letitia Cullom, was duly appointed Administratrix by the Clerk of Court of Onslow County, N.C. Plaintiff has been granted letters and has qualified and is acting as such Administratrix in the institution of this action within two years from the death of plaintiff's intestate.
5. During the school year 1997-1998 plaintiff's intestate, Letitia Cullom, was a minor of the age of eleven (11) years. Letitia Cullom was enrolled as a student in the 6th grade at Southwest Middle School.
6. From August, 1997 through October 22, 1997 Letitia Cullom was assigned to school bus number 241 driven by Kathy Parker Overton for transportation to and from Southwest Middle School, Onslow County, N.C.
7. The bus stop for Letitia Cullom was designated 1578 Burgaw Highway, Jim Alex Mobile Home Park. School bus 241 was scheduled to stop at this bus stop at 6:45 a.m.
8. During the school year 1997-1998, Letitia Cullom's brother, Tony Lamb, age 12, was also a student at Southwest Middle School and was assigned to bus number 241 driven by Kathy Parker Overton for transportation to and from school.
9. As a school bus driver and employee of defendant, Onslow County Board of Education, Kathy Parker Overton had a responsibility to stop at each designated bus stop to pick up each child assigned to her school bus route when that child was waiting at the school bus stop when the bus arrived.
10. On October 22, 1997 at approximately 6:40 a.m. Kathy Parker Overton was engaged in work and was about the business of the defendant, Onslow County Board of Education.
11. The salary of Kathy Parker Overton was paid from the State Public School Funds on October 22, 1997.
12. On October 22, 1997 at approximately 6:40 a.m., the plaintiff's intestate was killed when struck by a motor vehicle driven by Dianne Chisholm while crossing Highway 53, Burgaw Highway in Onslow County, N.C. while walking to school.
13. On October 22, 1997 at approximately 6:40 a.m., it was very dark on Highway 53 near the intersection of Maplehurst Road, Onslow County, N.C.
14. Sunrise on October 22, 1997 was at 7:21 a.m.
In addition, the parties stipulated into evidence the following:
1. Accident report dated October 22, 1999.
2. Death Certificate of Letitia Michelle Cullom.
3. Ambulance call report.
4. Laminated map of a section of Jacksonville.
5. Photographs of the vehicle which struck plaintiff.
 6. Depositions of Charles James Henson, Dianne Chisholm, Keenan Shepard, Kathy Overton, Sheila Taylor, Jeff Smith and Larquita Harris.
7. A folder of exhibits referenced in the depositions.
The Pre-Trial Agreement dated June 14 and 15, 2000 which was submitted by the parties is incorporated by reference.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. In October 1997, Letitia Cullom was 11 years old and a sixth grade student at Southwest Middle School in Onslow County. The school was approximately two-thirds of a mile away from Jim Alex Mobile Home Park where she and her family lived. The mobile home park was located on Highway 53, also known locally as Burgaw Highway. There were several schools nearby, including a high school and an elementary school located on the highway within a couple of miles of Letitia's home. She had attended the elementary school the previous school year.
2. Although Letitia lived close enough to Southwest Middle School that the county was not obligated to provide school bus transportation for her, a bus was assigned to drive a route which included the section of Highway 53 where she lived. Kathy Overton was assigned the route and was scheduled to leave the bus garage at approximately 6:30 each morning. Letitia was listed on the sheet of students who were to be picked up along the route. Her stop would have been at approximately 6:45 in the morning.
3. When Ms. Overton began driving the route that school year, she would stop at 1578 Burgaw Highway where Letitia lived, but there would be no children waiting at the stop. Ms. Overton was suspended for approximately two weeks shortly after school started that August, so a substitute driver drove the bus for that period. When Ms. Overton returned, Letitia's name had been deleted from the list of students on the sheet because she had not been riding the bus. Consequently, Ms. Overton did not stop at the mobile home park on her morning route.
4. Letitia had an older brother, Tony Lamb, who also attended Southwest Middle School. In addition, she had two younger siblings who went to Blue Creek Elementary School. The bus for the elementary school came by before the middle school bus. Letitia would wait with her younger brother and sister until they had gotten on their bus and then would walk to school instead of waiting for the middle school bus. She sometimes walked with Tony, but he usually left before she did. If she ever waited for her bus, it was very unusual. In view of the credibility issues raised by the evidence, it was not clear whether she ever took the bus in the morning. However, she did occasionally ride the bus home and her name was included on the rider list for the afternoon route.
5. It was quite common for students to only ride the school bus in the morning or in the afternoon but not at both times since parents often made arrangements for other transportation for their children either before or after school.
6. Plaintiff has alleged that Letitia regularly waited at the bus stop in the mornings at the beginning of the semester and that Ms. Overton routinely passed her, refusing to stop. That allegation and the supporting testimony has not been accepted as credible. However, Ms. Overton's testimony has also not been found to be very credible.
7. Both Letitia and Tony were regularly seen walking to school and appeared to be enjoying themselves. Other bus drivers who drove routes in the area only saw them waiting at the bus stop earlier with their younger brother and sister. They were not seen at the bus stop when the buses came by a second time on the way back to school after picking up the younger children. Neither they nor their mother ever complained to school staff or to other bus drivers that Ms. Overton's bus was not stopping for them. Consequently, the credible evidence established that they routinely walked to school by choice.
8. There were no sidewalks on Highway 53 between the mobile home park and Old Maplehurst Road where the children would turn to go towards school. They would have to cross the highway at some point by the time they reached Old Maplehurst Road. Although there was a traffic light at Old Maplehurst Road, the children often crossed the street earlier because they otherwise had to walk along a section where the shoulder became narrower at a curve in the road. The speed limit was 45 miles per hour on Highway 53 in this area and there was a fair amount of traffic on the road before 7:00 a.m. due to the nearby schools. However, a number of children besides Letitia and Tony regularly walked to school along this road.
9. On the morning of October 22, 1997, plaintiff waited with her younger siblings at the bus stop for their mobile home park. When Brenda Lanier, the elementary school bus driver, stopped the bus and opened the door, she greeted Letitia whom she was fond of having been Letitia's bus driver while Letitia was in elementary school. After responding to the greeting, Letitia asked her if she could ride with her in sort of a joking manner. Ms. Lanier smiled and advised her that she would have to take her own bus, at which point Letitia indicated that she would rather walk to school. After Ms. Lanier drove away, Letitia began walking down Highway 53 towards Old Maplehurst Road. At this time, it was very dark, being well before sunrise.
10. When plaintiff got to the intersection with Funny Farm Lane, she apparently decided to cross the highway even though a vehicle was approaching from the direction of Old Maplehurst Road. She ran out into the road such a short distance in front of the car that the driver could not avoid her. Letitia was struck and killed.
11. At the time of the accident, Ms. Overton had just started her route. She would not have passed Jim Alex Mobile Home Park until five to ten minutes later if the route had run according to schedule. However, she was held up in traffic that morning due to the accident and ran late for her stops along Highway 53.
12. The credible evidence did not establish that Kathy Overton was acting otherwise than as a reasonably prudent person while driving her school bus route on the morning of October 22, 1997. Although the credibility problems prevent definitive findings regarding whether Letitia had ever ridden the bus in the morning or whether Ms. Overton had passed her on any occasion, it was nevertheless clear from the credible evidence that Letitia preferred to walk to school and did so by her own choice the vast majority of the time. There was no pattern of Ms. Overton failing to stop for her at her bus stop. If that happened at all, it was an isolated event.
13. Plaintiff has also implied that Ms. Overton was negligent in failing to report that children were walking to school along Highway 53. If walking along Highway 53 were, in fact, too dangerous for an eleven year old child, Letitia's mother, Mary Chapman, should have been concerned enough to stop her from doing so. Ms. Chapman's allegation that she was unaware that plaintiff was walking to school has not been accepted as credible. Ms. Overton, on the other hand, was only responsible for the children riding on her bus.
14. The accident of October 22, 1997, which is the subject of this claim, was not due to any failure on Kathy Overton's part to exercise due care with respect to Letitia Cullom.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSION OF LAW
1. The motor vehicle accident of October 22, 1997 in which Letitia Cullom was killed was not the result of any negligence on the part of Kathy Overton. N.C. Gen. Stat. § 143-291.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. This claim is hereby DENIED.
2. Each side shall pay its own costs.
This 3rd day of October 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________ RENE C. RIGGSBEE COMMISSIONER